IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| American Southern Home Insurance Company,<br><br>           Plaintiff,<br><br>    v.<br><br>Lloyd R. Goodale, Sr., Lloyd R. Goodale, Jr., Patricia M. Kimball,<br><br>           Defendants. | C/A No. 0:15-cv-04789-CMC<br><br>Opinion and Order Granting Motion for Summary Judgment |

Through this action, Plaintiff, American Southern Home Insurance Company ("American Southern"), seeks a declaratory judgment that it has no obligation to defend or indemnify Defendants, Lloyd R. Goodale, Sr. ("Goodale, Sr.") and Lloyd R. Goodale, Jr. ("Sonny") (collectively "Goodales"), for claims arising from a golf-cart accident ("Accident") in which Defendant Patricia M. Kimball ("Kimball") was injured. Those claims are now pending in *Kimball v. Goodale*, S.C. Com. Pl. Case No. 2016-CP-46-749 ("Underlying Action").

The matter is before the court on American Southern's motion for summary judgment. For the reasons set forth below, the motion is granted.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of

material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Rule 56(c)(1) provides as follows:

(1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials; or

(b) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## FACTS[1]

On April 4, 2015, Kimball broke several bones and suffered other injuries when she was ejected from a golf cart driven by Sonny and owned by his father, Goodale, Sr. Kimball alleges Sonny is liable for her injuries because he was driving under the influence of alcohol and the accident was caused by his reckless driving. Underlying Action, Compl. ¶¶ 23-25. She alleges Goodale Sr. is liable on a variety of grounds including that he failed to secure the golf cart to

---

[1] Because this action seeks declaratory relief as to American Southern's duty to defend or indemnify the Goodales for claims asserted in the Underlying Action, the facts presented here are drawn primarily from the Complaint in that action. The court also assumes for purposes of this motion that Goodale, Sr. was negligent in failing to properly secure the golf cart and that this negligence contributed to the accident. *See* ECF No. 37 (American Southern's stipulation). In light of the nature of the action and this assumption, no discovery is necessary prior to resolution of the motion.

prevent Sonny from using it despite Goodale, Sr.'s knowledge of Sonny's history of alcohol abuse, alcohol-related suspension of his driver's license, and propensity for driving the golf cart at night to a local bar.  Underlying Action, Compl. ¶¶ 16, 18, 31.

For purposes of this motion, it is undisputed the Goodales were, at the time of the Accident, "insureds" under a Manufactured Home Insurance Policy ("Policy") issued by American Southern to Goodale, Sr.  ECF No. 31-1 at 2.  It is also undisputed for purposes of this motion that "Goodale, Sr. negligently secured and/or entrusted the subject golf cart to [Sonny]."  ECF No. 37.

The Policy excludes coverage of claims "arising out of":

(1) The ownership, maintenance, occupancy, operation, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or occupied by or rented or loaned to an insured person;

(2) The entrustment by an insured person of a motor vehicle or any other motorized land conveyance to any person; [or]

\* \* \*

(4) Failure to supervise, or negligent supervision of, any person involving a motor vehicle or other motorized land conveyance by an insured person.

Policy § II.1.(f) ("Motor Vehicle Exclusion").

The Policy defines Motor Vehicle as follows:

"Motor Vehicle" means:

(a)  *any motorized land conveyance of any type.*  This is regardless of whether or not it is licensed for road use or whether the motorized land conveyance is made for use on or off public roads.  *The term "motor vehicle" shall include, but is not limited to,* automobiles, motorcycles, mopeds, all-terrain vehicles, tractors, riding lawnmowers, snowmobiles, and go-carts.  *It does not mean:*

(1) *a golf cart while used on a golf course for golfing purposes.*

Policy, Definitions ¶ 14.a. (emphasis added).

**ARGUMENTS**

American Southern makes two related arguments in support of its motion for summary judgment. First, it argues the golf cart involved in the Accident falls within the Policy's definition of Motor Vehicle and is not excepted from that definition because it was not being operated on a golf course for golfing purposes at the time of the Accident. Second, American Southern argues the Policy's Motor Vehicle Exclusion precludes coverage of Kimball's claims because the Accident arose out of the ownership, maintenance, occupancy, operation, use, or entrustment of a Motor Vehicle or failure to supervise, or negligent supervision of a person involving a Motor Vehicle.

The Goodales challenge both arguments. First, they argue the Motor Vehicle definition is ambiguous as it relates to golf carts and the ambiguity should be construed in their favor. This argument, if successful, would preclude application of the Motor Vehicle Exclusion to any aspect of Kimball's claims. Alternatively, they argue allegations Goodale, Sr. failed to properly secure the golf cart fall outside the Motor Vehicle Exclusion, even if the golf cart is a Motor Vehicle. This argument rests on the premise a duty to secure property does not arise out of the ownership, maintenance, occupancy, operation, use, entrustment, or related supervision of that property. Kimball joins in the Goodales' second, but not their first, argument.

In light of these arguments, the motion presents two questions: (1) whether a golf cart used for purposes other than golfing on a golf course falls within the Policy definition of Motor Vehicle; and (2) whether an accident caused by a negligent failure to secure a Motor Vehicle arises out of the ownership, maintenance, or other excluded activity relating to Motor Vehicles. For reasons explained below, the court answers both questions in the affirmative.

4

**DISCUSSION**

The questions presented raise issues of policy interpretation. Under South Carolina law, "[w]ords in insurance contracts are to be given their plain, ordinary and popular meaning. . . . [A]ny ambiguous terms are to be construed liberally in favor of the insured [and] exclusionary terms [are to be] narrowly construed to the benefit of the insured." *Hutchinson v. Liberty Life Ins. Co.*, 743 S.E.2d 827, 829 (S.C. 2013) (internal marks and citations omitted); *see also Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2004) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability[.]"); *Tobin v. Beneficial Standard Life Ins. Co.*, 675 F.2d 606, 607 (4th Cir. 1982) ( in the absence of ambiguity, the policy is to be interpreted according to the plain and ordinary meaning of the words by which the parties chose to contract."). While ambiguities are construed in favor of coverage, "[c]ourts should not . . . torture the meaning of policy language in order to extend or defeat coverage that was never intended by the parties." *Cook v. State Farm Auto. Ins. Co.*, 656 S.E.2d 784, 786-787 (S.C. Ct. App. 2008) (internal marks omitted).

**I.     The Golf Cart Falls within the Definition of Motor Vehicle**

The Policy defines Motor Vehicle to include "*any motorized land conveyance of any type . . . regardless of whether it is licensed for road use or whether the motorized land conveyance is made for use on or off public roads.*" Policy, Definitions ¶ 14.a. (emphasis added). The definition lists the following specific examples:  "automobiles, motorcycles, mopeds, all-terrain vehicles, tractors, riding lawnmowers, snowmobiles, and go-carts[.]"  This list is preceded by a statement that Motor Vehicle "includes *but is not limited to*" the enumerated items. *Id.* (emphasis added). It is followed by a list of three exceptions, including one for "a golf cart while used on a golf course for golfing purposes." *Id.*

5

A golf cart is indisputably a "motorized land conveyance." It, therefore, falls within the general definition of Motor Vehicle as a "motorized land conveyance of any type." A golf cart is, moreover, similar in nature to the forms of conveyance in the list of examples, which is preceded by the non-exclusionary phrase "including but not limited to[.]" Thus, the plain language of the defined term "Motor Vehicle" includes golf carts.

Were there any ambiguity (and the court finds none), it would be removed by the inclusion of "a golf cart while used on a golf course for golfing purposes" as one of three listed exceptions. There would be no reason to except golf carts from the definition of Motor Vehicle under the specified circumstances if golf carts were not included within the definition.

The court, therefore, finds the policy unambiguously includes golf carts within the definition of Motor Vehicle except while they are being used on a golf course for golfing purposes. As there is no dispute that the golf cart involved in the Accident was not being used on a golf course or for golfing purposes, it follows that the golf cart involved in the Accident falls within the definition of Motor Vehicle for purposes of determining coverage.

**II.     Failure to Secure a Motor Vehicle Falls within the Motor Vehicle Exclusion**

It is undisputed that, if the golf cart falls within the definition of Motor Vehicle, the Motor Vehicle Exclusion precludes coverage for most allegations of negligence in the Underlying Action. There is, for example, no doubt this exclusion precludes coverage to the extent Kimball's injuries were caused by (1) Sonny's negligent operation or use of the golf cart (excluded by Policy § II.1.f.(1)), (2) Goodale, Sr.'s negligent entrustment of the golf cart to Sonny (excluded by Policy §§ II.1.f.(2)), or (3) Goodale, Sr's negligent failure to supervise Sonny's use of the golf cart (excluded by Policy §§ II.1.f.(4)). *See McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770 (S.C.

1993) (holding "for the purpose of an exclusionary clause in a general liability policy, 'arising out of' should be narrowly construed as 'caused by'").

Defendants, instead, argue that coverage is available (and thus a duty to defend arises) to the extent Kimball alleges her injuries were caused by Goodale, Sr.'s negligent failure to properly secure the golf cart. The court disagrees. Any duty to secure the golf cart is a duty arising from Goodale, Sr.'s ownership or maintenance of the golf cart and any injury resulting from a breach of that duty is an injury arising out of ownership or maintenance. The Complaint in the Underlying Action acknowledges as much. *See* Underlying Action, Compl. ¶ 28 (alleging Goodale, Sr. "*as owner* and occupier of his premises and golf cart, *had a duty to secure,* maintain, manage, supervise and control his . . . property"); *id.* ¶ 29 (alleging Goodale, Sr. had a duty as owner "*to secure*, manage and control his property to prevent Sonny Goodale from using the golf cart in dangerous circumstances"). To hold otherwise would be to torture the language of the policy to create coverage where none was intended.

The Goodales seek to avoid the exclusion by arguing "[t]he only possible way that this exclusion could be said to apply to the alleged liability of Goodale, Sr. is due to his *mere ownership* of the golf cart." ECF No. 39 at 8 (emphasis added). They then argue mere ownership "is not sufficient to impose liability for the claims asserted by Kimball." *Id.* The latter point (that mere ownership is insufficient to impose liability) may be true. It does not, however, preclude application of the exclusion as any duty to secure the golf cart necessarily flows from Goodale, Sr.'s ownership and related maintenance of the golf cart.

Apparently recognizing the difficulty with the Goodales' ownership argument, Kimball argues the duty to secure the golf cart arose from Goodale, Sr.'s possession, rather than his ownership, of the golf cart. In support of this argument, Kimball cites cases addressing duties

7

flowing from possession of (and control over) a vehicle. Kimball's argument is not persuasive as the cases she cites address whether duties arise from possession, rather than construction of insurance contracts.

## CONCLUSION

For the reasons set forth above, American Southern's motion for summary judgment is granted. Judgment shall be entered for American Southern declaring it has no duty to defend or indemnify the Goodales as to claims asserted in the Underlying Action.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
August 17, 2016